UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAWUANA WILLIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-3235-B |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant The University of Texas Southwestern Medical Center ("UTSW")'s Motion to Dismiss (Doc. 15). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** UTSW's Motion.

### I.

### BACKGROUND

This is an employment case. Tawuana Willie is an African-American woman who worked as a quality-assurance registered nurse ("QAN") at UTSW. Doc. 1-5, Pet., 4. As alleged, in mid-2025, UTSW constructively discharged Willie from her job by imposing the working conditions detailed below. *See id.* at 7.

Willie alleges that, despite being equally or more qualified, she was paid around 40-46% less than UTSW's other QANs who were racially white even though Willie and her white counterparts performed "substantially equal" work. *Id.* at 4.

Jennifer Zentz, Willie's direct supervisor, allegedly treated her differently than the white QANs by: (1) regulating Willie to administrative and clerical tasks while white QANs performed

"professional-level" QAN duties; (2) excluding Willie from participating in job-specific communications, emails, and meetings, which prevented her from performing at the same level as her colleagues; (3) denying Willie from professional-development opportunities that were available to white employees; (4) and criticizing and humiliating Willie in front of her peers. *Id.* at 5.

After Willie reported Zentz's behavior to Human Resources ("HR"), her work environment changed for the worse. *See id.* For example, she was given more work than one QAN could reasonably manage. *Id.* To keep up, Willie had to work 16-18 hours a day while her white colleagues could satisfy their lighter workloads during normal working hours. *Id.* Additionally, she continued to be excluded from team meetings and communications. *Id.* Lastly, she faced false accusations and increased scrutiny over her performance. *Id.*

Willie then raised her concerns to UTSW's internal Equal Employment and Title IX office. *Id.* But as with her prior complaints, reporting only worsened the mistreatment. *Id.* at 5-6. Again, she was given an unmanageable workload, excluded from even more meetings, stripped of her decision-making authority, and received "veiled threats" about the future of her employment at UTSW. *Id.*

Willie also alleges she suffers from lupus, a condition that is aggravated by stress. *Id.* at 6. UTSW knew of her lupus yet created a stressful work environment for Willie. *Id.* Eventually, Willie was hospitalized because the "relentless pressure, humiliation, and extended work hours" resulted in a lupus flare up. *Id.*

Willie filed a charge of discrimination with the EEOC and received a Right to Sue Notice. *Id.* In late 2025, she filed her Petition in Texas state court and asserted the following claims against UTSW:

(1) Violations of Title VII of the Civil Rights Act of 1964 ("Title VII") for (i) unlawful discrimination on the basis of race, color, and national origin, (ii) retaliation, and (iii) hostile work environment (**"Claim One"**);

(2) Violations of the Americans with Disabilities Act ("ADA") for (i) disability discrimination and (ii) failure to provide accommodations (**"Claim Two"**);

(3) Violations of the Texas Commission on Human Rights Act ("TCHRA") for (i) disability discrimination and (ii) failure to provide accommodations (**"Claim Three"**)

(4) Violation of the TCHRA for (i) discrimination on the basis of race, color, national origin, (2) retaliation, and (3) hostile work environment (**"Claim Four"**);

(5) Violation of the Equal Pay Act ("EPA") (**"Claim Five"**);

(6) Wrongful termination by way of constructive discharge in violation of Title VII, ADA, and TCHRA (**"Claim Six"**);

(7) Violation of 42 U.S.C. § 1981 (**"Claim Seven"**);

(8) Violation of the Family and Medical Leave Act of 1993 ("FMLA") for (i) interference and (ii) retaliation (**"Claim Eight"**); and

(9) Negligent retention and supervision (**"Claim Nine"**).

*Id.* at 7-20.

UTSW filed its Answer in state court. *See generally* Doc. 1-5, Answer. Then, UTSW removed this case to federal court. *See generally* Doc. 1, Notice Removal.

In March 2026, UTSW filed its Motion to Dismiss under Federal Rule of Civil Procedure 12(c). In its Motion, UTSW asserts three arguments for dismissal. First, UTSW argues state sovereign immunity bars Willie's TCHRA (Claims Three, Four, and Six), ADA (Claim Two), § 1981 (Claim Seven), FMLA (Claim Eight), and negligence (Claim Nine) claims. Second, UTSW argues Willie has failed to plausibly state a claim upon which relief can be granted for her disparate treatment discrimination claims under Title VII (Claim One) and the TCHRA (Claim Four) and EPA claim (Claim Five). Lastly, UTSW argues Willie's wrongful termination by way of constructive discharge (Claim Six) and disability discrimination and failure to accommodate (Claims Two and

Three) claims should be dismissed for failure to exhaust administrative remedies. Notably, UTSW does not move to dismiss Willie's Title VII retaliation and hostile work environment claims at this time. *Id.* at 20.

## II.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court applies the same standard to a Rule 12(c) motion as it does to a Federal Rule of Civil Procedure 12(b)(6) motion. *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2015 WL 1757358, at *1 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (citation modified).

## III.

## ANALYSIS

The Court begins with the jurisdictional issue of whether UTSW's asserted state sovereign immunity bars some of Willie's claims from being heard in this Court. Then the Court determines whether Willie has plausibly alleged EPA and disparate treatment claims. Lastly, the Court addresses UTSW's affirmative defense of failure to exhaust administrative remedies.[1]

A.      *The Court Does Not Have Jurisdiction Over Willie's ADA, FMLA, § 1981, and Negligence Claims Because They Are Barred by UTSW's State Sovereign Immunity.*

"Sovereign immunity is jurisdictional." *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 280 (5th Cir. 2002) (citation omitted). And "a lack of subject matter jurisdiction may be raised at any time." *Id.* (citation modified). State sovereign immunity generally bars suits brought by citizens against the state. *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 346-47 (5th Cir. 2019) (citing *Alden v. Maine*, 527 U.S. 706, 733 (1999)). State sovereign immunity extends to "arms of the state." *Id.* at 347. But the citizen's suit against the state can proceed in federal court if either of two exceptions applies: (1) if Congress abrogates a state's sovereign immunity under Section 5 of the Fourteenth Amendment; or (2) if a state waives its sovereign immunity and consents to suit in federal court. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276-77 (5th Cir. 2005).

In its Motion, UTSW argues state sovereign immunity bars Willie's recovery for her TCHRA, ADA, FMLA, § 1981, and negligence claims. Doc. 16, Def.'s Br., 4-10. Willie does not dispute that UTSW is an arm of Texas. *See Daniel v. U.T. Sw. Med. Ctr.*, No. 3:18-CV-1868-G, 2019

---

[1] The day after filing its motion for judgment on the pleadings, UTSW filed a motion to stay discovery and case management deadlines pending the resolution of the Motion to Dismiss. Doc. 17, Mot. Stay Discovery, 1. Willie opposes the requested stay. *See* Doc. 20, Pl.'s Resp. & Opp'n, 1. The Court's decision on the Motion to Dismiss moots UTSW's Motion to Stay Discovery (Doc. 17).

WL 1778637, at *1 (N.D. Tex. Apr. 22, 2019) (Fish, S.J.) (collecting cases noting that UTSW is an arm of the State). The Court evaluates UTSW's sovereign immunity argument as it relates to each relevant claim below.

    1.       The TCHRA Claims Are Not Barred by UTSW's Sovereign Immunity.

The parties dispute whether the Court can exercise jurisdiction over Willie's TCHRA claims. *See* Doc. 16, Def.'s Br., 5-6; Doc. 23, Pl.'s Resp., 3-4.

Texas has waived its immunity from TCHRA suits brought in state court but has not waived its immunity for such suits in federal court. *Pequeño v. Univ. of Tex. at Brownsville*, 718 F. App'x 237, 241 (5th Cir. 2018) (other citation omitted) (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002)). Accordingly, the issue before the Court is if removal from state court to federal court waives Texas's sovereign immunity from TCHRA claims.

The Fifth Circuit addressed this issue in *Zeng v. Texas Tech Univ. Health Sci. Ctr.*, 836 F. App'x 203 (5th Cir. 2020). There, a terminated employee sued a state medical school in state court for discrimination in violation of the TCHRA and Title VII. *Id.* at 206-07. The medical school then removed the case to federal court. *Id.* at 207. The district court granted summary judgment to the medical school on its TCHRA claim because the medical school, as an arm of the state, had sovereign immunity. *See id.* On appeal, the Fifth Circuit reversed, noting that "a State waives sovereign immunity when it removes a case from state court to federal court" for "state-law claims, in respect to which the State has explicitly waived sovereign immunity from state-court proceedings." *Id.* (citation modified) (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617-19 (2002)). The Texas Legislature waived Texas's immunity from liability for TCHRA claims brought in state court. *Id.* And the medical school defendant had waived its immunity from suit by removing the

case to federal court. *See id.* Therefore, summary judgment on the TCHRA claim on the basis of sovereign immunity was improper. *Id.* at 207-08.

The facts here are analogous to the *Zeng* case. Willie sued UTSW for alleged violations of the TCHRA in Texas state court. UTSW then removed the case to federal court. By removing the case to federal court, UTSW has waived its immunity from answering in federal court for TCHRA claims. Accordingly, sovereign immunity does not preclude Willie's TCHRA claims.

    2.       The ADA Claims Are Barred by UTSW's Sovereign Immunity.

Willie alleges that UTSW discriminated against her based on her lupus by treating her less favorably than non-disabled employees and by not providing her with an accommodation. Doc. 1-5, Pet., 12-13. She requests monetary and injunctive relief. *Id.* at 13. In its Motion, UTSW characterizes the claim as being brought under Title I of the ADA.[2] Doc. 16, Def.'s Br., 6. Willie does not contest the characterization in her response. UTSW again asserts sovereign immunity as an affirmative defense. *See id.*

The Supreme Court and Fifth Circuit have repeatedly held that state sovereign immunity precludes suits brought by private citizens seeking money damages for state violations of Title I of the ADA. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *Soto v. MD Anderson Cancer Ctr.*, No. 21-20249, 2021 WL 5768105, at *1 (5th Cir. Dec. 3, 2021) ("Texas' sovereign immunity was neither abrogated nor waived for ADA claims." (citing *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596, 598 (5th Cir. 2021))). Accordingly, the Court lacks jurisdiction to issue money

---

[2] The Fifth Circuit has also held that employment discrimination claims are properly brought under Title I of the ADA rather than Title II. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 420 (5th Cir. 2017) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015)).

damages as relief for Willie's Title I ADA claims for disability discrimination and failure to accommodate.

Turning to Willie's request for injunctive relief, the Court similarly finds it barred by UTSW's sovereign immunity. *See Cozzo*, 279 F.3d at 280-81 ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." (citation omitted)). If Willie seeks prospective injunctive relief, the appropriate method is through the *Ex parte Young* doctrine. *See Garrett*, 531 U.S. at 374 n.9 (noting that individuals with disabilities seeking redress for state violations of Title I of the ADA should pursue injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)). That doctrine provides an exception to state sovereign immunity and permits an individual to obtain prospective injunctive relief when suing an *officer* of the state. But it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (emphasis removed and citation omitted). Accordingly, courts in this circuit have found that Title I ADA claims for injunctive relief against states and their agencies are barred by sovereign immunity. *See Kagarice v. Univ. of N. Tex.*, No. 4:17-CV-00509, 2018 WL 1163218, at *3 (E.D. Tex. Feb. 9, 2018), *report and recommendation adopted*, 2018 WL 1156273 (E.D. Tex. Mar. 4, 2018); *Ferguson v. Nova Acad.*, No. 3:17-CV-0366-S-BK, 2018 WL 2303801, at *3 (N.D. Tex. Apr. 24, 2018) (Toliver, Mag. J.), *report and recommendation adopted*, 2018 WL 2301840 (N.D. Tex. May 21, 2018) (Scholer, J.); *Allen v. Benson*, 691 F. Supp. 3d 746, 756-57 (E.D. Tex. 2023).

Here, because Willie sued UTSW and not any of its officers, sovereign immunity bars her claim for injunctive relief. *See Perez*, 307 F.3d at 332 n.7 (noting that plaintiff's ADA claim for injunctive relief against state agency was barred by sovereign immunity).

3.     The FMLA Claims Are Barred by UTSW's Sovereign Immunity.

Willie alleges that UTSW interfered with her FMLA rights by denying her leave and retaliated against her for attempting to exercise her FMLA rights. *Id.* In response, UTSW asserts that Willie's FMLA claims are barred by sovereign immunity. Doc. 16, Def.'s Br., 7-8.

An eligible employee can take leave under the FMLA to address a family member's or his own serious health problems. 29 U.S.C. § 2612(a)(1)(C), (D). "Leave taken under the FMLA to care for a family member is often labeled 'family-care' leave; leave taken to address an employee's own health condition is frequently referred to as 'self-care' leave." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015) (citing *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 34 (2012)). The Supreme Court in *Coleman* held that states retained their sovereign immunity for FMLA claims brought under the self-care provision. *See Coleman*, 566 U.S. at 37 ("Standing alone, the [FMLA] self-care provision is not a valid abrogation of the States' immunity from suit."). The Fifth Circuit has since clarified that a state's sovereign immunity bars a plaintiff's retaliation and interference claims arising under the FMLA's self-care provision. *See Bryant*, 781 F.3d at 769.

Here, Willie's FMLA claims are barred by UTSW's sovereign immunity. Willie's claims fall under the FMLA's self-care provision because her Petition only discusses her own medical condition—lupus. *See id.* at 768. She does not allege she needed leave to care for an ill family member. Accordingly, because her claims fall under the self-care provision of the FMLA, the Court does not have jurisdiction over Willie's FMLA claims against UTSW because they are barred by sovereign immunity.

4. The § 1981 Claim is Barred by UTSW's Sovereign Immunity.

Willie also asserts a § 1981 claim for race discrimination in contracting. Doc. 1-5, Pet., 16-17. UTSW argues that dismissal of the § 1981 claim is appropriate because its sovereign immunity bars the Court from exercising jurisdiction over the claim. Doc. 16, Def.'s Br., 9.

The Court agrees with UTSW that sovereign immunity bars Willie's § 1981 claim. Congress has not abrogated state sovereign immunity for § 1981 claims. *See Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 388 (5th Cir. 2018) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A 1981)). Nor has Willie argued that Texas consented to suit or otherwise waived its immunity for § 1981 claims. Accordingly, dismissal of Willie's § 1981 claim is proper because it is barred by UTSW's sovereign immunity.

5. Willie's Negligent Retention and Supervision Claims Are Barred by UTSW's Sovereign Immunity.

Willie alleges that UTSW acted negligently by retaining and failing to properly supervise her direct manager, Jennifer Zentz. Doc. 1-5, Pet., 19. In its Motion, UTSW argues dismissal of the negligence claims are warranted because the Texas Tort Claims Act ("TTCA") does not waive its sovereign immunity for negligence-based torts. Doc. 16, Def.'s Br., 9-10.

Texas has not waived its immunity for negligent retention or supervisions claims. *See Hernandez v. Tex. Dep't of Public Safety*, No. SA-02-CA-566-RF, 2005 WL 356855, at *6 (W.D. Tex. Jan. 5, 2005) ("The Texas legislature established waiver of sovereign immunity for some tort claims through the Texas Tort Claims Act, but the Act does not provide that a state government entity is liable for the negligent hiring, training, and supervision of employees." (citation omitted)); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655-56 (Tex. 2008) (noting that the TTCA waives state immunity for motor vehicle liability or the use or condition of real property or tangible

personal property (citation omitted)). Accordingly, the Court does not have jurisdiction over Willie's

negligence claims due to UTSW's sovereign immunity.

B.        *Willie Failed to Plausibly Allege an EPA Claim but Plausibly Alleged a Disparate Treatment Claim.*

In addition to asserting sovereign immunity, UTSW also argues that dismissal is appropriate

on Willie's EPA claim and disparate treatment claims for failure to state a claim. The Court begins

by evaluating the EPA claim, then turns to the disparate treatment claims.

Willie alleges that white QANs at UTSW were paid approximately 40-46% more than her

for performing substantially equal work. Doc. 1-5, Pet., 4. When Willie complained about the pay

disparity, UTSW retaliated against her. *Id.* at 5. In its Motion, UTSW argues that Willie has not

alleged facts that plausibly state an EPA claim because EPA claims are limited to discrimination on

the basis of sex, and Willie does not allege that she was paid less than male QANs. Doc. 16, Def.'s

Br., 12-13.

The EPA was enacted to prohibit an employer from paying unequal wages based on the sex

of employees who perform equal work. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

Therefore, "an essential element of any Equal Pay Act claim is demonstrating a pay disparity between

employees of the opposite sex." *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-CV-2022-B, 2016 WL 795966,

at *6 (N.D. Tex. Feb. 29, 2016) (Boyle, J.) (other citation omitted) (citing *Brennan*, 417 U.S. at 195;

*see also Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) ("To establish a prima facie case

under the Equal Pay Act, [the plaintiff] must show . . . she was paid less than the employee of the

opposite sex providing the basis of comparison.").

Dismissal is appropriate on Willie's EPA claim because she does not allege that male QANs

were paid more than her. Although she alleges white QANs were paid more than her, she does not

include any facts identifying the gender of the white co-workers. Accordingly, without additional allegations, the Court cannot infer UTSW is liable for an EPA violation.

Next, UTSW moves to dismiss Willie's disparate treatment claims under Title VII and the TCHRA on the basis that Willie did not adequately allege comparators. Doc 16, Def.'s Br., 13-15. In response, Willie argues that dismissal is inappropriate because a plaintiff does not need to identify a comparator at the pleading stage. Doc. 23, Pl.'s Resp., 10-11.

A plaintiff can establish a discrimination claim by showing disparate treatment based on her protected class.[3] *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). At the motion to dismiss stage, a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Chhim v. Univ. of Tex. at Aus.*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted). The ultimate elements of a disparate treatment claim are "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese*, 924 F.3d at 767 (citation modified).

Willie does not need to allege a comparator at this stage to survive a motion to dismiss. *See Jenkins v. City of Dallas*, 717 F. Supp. 3d 528, 536-37 (N.D. Tex. 2024) (Boyle, J.). Instead, the question is "whether the factual allegations are enough to 'nudge' her discrimination claim 'across the line from conceivable to plausible.'" *Id.* at 537 (quoting *Cicalese*, 924 F.3d at 768). Therefore,

---

[3] To analyze claims for discrimination under Title VII and the TCHRA, courts use the same framework for both statutes. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (noting that TCHRA employment discrimination claims are "effectively identical to Title VII" claims (citation omitted)); *Gerdin v. CEVA Freight, LLC*, 908 F. Supp. 2d 821, 833 (S.D. Tex. 2012) ("Because the TCHRA executes Title VII policies, claims brought under the TCHRA are analyzed in the same way as cases brought under Title VII." (citing *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir.2004))).

while naming a comparator can help "nudge" a claim "across the line," it is not the only way to do so.

Willie has plausibly alleged she suffered an adverse action based on her race. In *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc), the Fifth Circuit directly addressed discrimination in the "terms, conditions, or privileges of employment." *See also Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024) (noting that prior to *Hamilton*, Fifth Circuit precedent required a plaintiff to show discrimination regarding an ultimate employment decision). There, female correctional officers brought claims against Dallas County for sex discrimination after the county changed the officers' shift schedule from seniority-based to sex-based and prevented the female officers from taking both weekend days off. *Hamilton*, 79 F.4th at 497. The Fifth Circuit denied the motion to dismiss and found that the time shifts that employees are assigned to work are "quintessential terms or conditions" of employment because they "go to the very heart of the work-for-pay arrangement." *Id.* at 503. Therefore, an allegation that the county gave "men [the] full weekends off while denying the same to women . . . states a plausible claim of discrimination under Title VII." *Id.* at 497.

Like the time shifts in *Hamilton*, the alleged differences here in pay, access to training, and inclusion in job-related communications are all "essential terms or conditions of employment" because they "go to the very heart of the work-for-pay arrangement." *See id.* at 503. Therefore, by allegedly excluding Willie from trainings, meetings, and equal pay, while providing the same to white QANs, UTSW plausibly denied Willie material components of her employment based on her race. Accordingly, drawing all inferences in favor of Willie as the plaintiff, the Court finds she has alleged a plausible disparate treatment claim.

C.      *Willie Did Not Exhaust Her Administrative Remedies for Her Disability Discrimination and Wrongful Termination by Constructive Discharge Claims.*

UTSW argues that Willie's disability discrimination claim and constructive discharge theory under the TCHRA and Title VII should be dismissed for failure to exhaust administrative remedies.[4] Doc. 16, Def.'s Br., 11. In support of its affirmative defense, UTSW attaches the Charge of Discrimination ("Charge") as an exhibit to its motion to dismiss. *See generally* Doc. 16-1, Charge.

In response, Willie argues that the Charge adequately encompasses her disability claims and constructive discharge theory. Namely, she argues that the facts underpinning the constructive discharge theory are adequately described in the Charge: the "unequal treatment, escalating hostility after protected complaints, exclusion from meetings and training, overwork, public humiliation[.]" Doc. 23, Pl.'s Resp., 9. In regard to the disability claims, she points out that her Petition alleges that the Charge included "disability-related retaliation." *Id.* at 10; *see* Doc. 1-5, Pet., 7.

Prior to bringing a TCHRA or Title VII discrimination claim in federal court, an employee must "exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *See Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 358 (5th Cir. 2013) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018) (citation omitted). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Houston*, 906

---

[4] UTSW also asks the Court dismiss Willie's ADA claims on this basis. But as discussed above, the Court does not have jurisdiction over the ADA claims.

F.2d 177, 179 (5th Cir. 1990)). To determine if the asserted claim in the complaint is "like or related to" the scope of the EEOC investigation, *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466-67 (5th Cir. 1970), the Fifth Circuit instructs courts to perform a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789 (citations omitted). Accordingly, "[t]o determine whether a plaintiff exhausted his claims, courts look to the EEOC charge." *Gunn v. Lane Gorman Trubitt, LLC*, No. 3:23-CV-2635-B, 2025 WL 268110, at *3 (N.D. Tex. Jan. 22, 2025) (Boyle, J.) (citation omitted).

"Failure to exhaust is an affirmative defense that should be pleaded." *Davis*, 893 F.3d at 307 (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 142 (5th Cir. 2016) (en banc) (Haynes, J., concurring)). "To obtain . . . dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings." *Taylor v. Lear Corp.*, No. 3:16-CV-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (Fitzwater, J.) (citations omitted). "Documents attached to the motion to dismiss are considered part of the pleadings if they are (1) referenced in the complaint and (2) central to the plaintiff's claim." *Rumble, Inc. v. World Fed'n of Advertisers*, No. 7:24-CV-0115-B, 2025 WL 2345076, at *1 n.1 (N.D. Tex. Aug. 13, 2025) (Boyle, J.).

Here, the Court may examine the Charge attached to UTSW's Motion because it is explicitly referenced in Willie's petition, *see* Doc. 1-5, Pet., 7, and it is central to her TCHRA and Title VII claims, *see Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013). Additionally, Willie does not argue against the Court's review of the Charge in resolving the pending Motion or otherwise contest its authenticity. *See King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) (Ramirez, Mag. J.) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may

be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested." (citation omitted)).

The Court finds that Willie failed to exhaust her administrative remedies for her disability claims and constructive discharge theory. Beginning with the disability claims, the Court reads Willie's charge of discrimination broadly, and notes that her failure to check the disability box in the Charge is not fatal in of itself. *See Pacheco*, 448 F.3d at 792. But the Charge does not include facts about Willie's disability. Willie does not mention her lupus condition at all in the Charge. Someone reading the Charge without knowledge of the Petition's contents would not know that Willie had any grievances against UTSW that involved her disability. Accordingly, as Willie's disability-based claims cannot reasonably be expected to grow out of the Charge, she has failed to exhaust her administrative remedies for those claims.

Turning to the constructive discharge theory, the Court notes that Willie's failure to discuss her resignation or desire to resign in the Charge precludes her from exhausting her admirative remedies for that theory. Willie did not have to use the "magic words" of constructive discharge to exhaust her administrative remedies. *See Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 168 (5th Cir. 2018). But she did need to include facts "like or related to" the constructive discharge. *Id.* (citation omitted). In *Davenport*, the Fifth Circuit found a district court properly dismissed a sexual harassment claim based on a constructive discharge theory for lack of exhaustion when the plaintiff did not "allege that she left her employment or her reasons for leaving" in the charge. *Id.* Here, Willie's Charge does not mention her resignation. Nor does it indicate any desire to resign from her position. Accordingly, the Court finds Willie cannot assert a constructive discharge theory as she failed to exhaust her administrative remedies.

*D.      The Court Grants Leave to Amend.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." Fed. R. Civ. P. 15(a)(2). Additionally, the Fifth Circuit has held that "claims barred by sovereign immunity are dismissed without prejudice." *Alford v. Texas Bd. of L. Exam'rs*, No. 25-20072, 2025 WL 3175971, at *1 (5th Cir. Nov. 13, 2025) (citing *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 620 (5th Cir. 2020)).

The Court dismisses without prejudice Willie's ADA, FMLA, § 1981, and negligence claims because they are barred by state sovereign immunity (Claims Two, Seven, Eight, and Nine). The Court dismisses without prejudice Willie's EPA claim because it fails to state a claim upon which relief can be granted (Count Five). Lastly, the Court dismisses without prejudice Willie's disability discrimination claim (Claim Three) and wrongful termination by constructive discharge claim (Claim Six) for failure to exhaust administrative remedies.

Willie has **21 days** from the issuance of this opinion to file an amended complaint. After that date has passed, if Willie seeks to file an amended complaint, she must request leave of Court.

**IV.**

**CONCLUSION**

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the Motion (Doc. 15). UTSW's Motion is **GRANTED** as to the following claims:

- Claims Two, Seven, Eight, and Nine are **DISMISSED without prejudice** as they are barred by the doctrine of state sovereign immunity.

- Claim Five is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

- Claims Three and Six are **DISMISSED without prejudice** for failure to exhaust administrative remedies.

UTSW's Motion is **DENIED** as to Claims One and Four. Willie's Title VII and TCHRA claims for (i) discrimination on the basis of race, color, national origin, (2) retaliation, and (3) hostile work environment will go forward.

UTSW's Motion to Stay Discovery (Doc. 17) is **DENIED as moot**.

**SO ORDERED.**

**SIGNED: June 3, 2026.**

_____

**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**